IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEDERAL SIGNAL CORPORATION,

   Plaintiff,

  v.

TAMMCOR INDUSTRIES, INC.,
and PEERLESS INDEMNITY
INSURANCE COMPANY (a
Liberty Mutual Company),

   Defendants.

Case No. 14 C 7683

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Plaintiff, Federal Signal Corporation ("Federal Signal") was named as a defendant in a California state court products liability action arising from a personal injury suffered by an employee while working on board a marine vessel. The employee alleged that he suffered permanent partial blindness caused by wind-borne particles of paint hitting him in the eyes. The paint particles blew off of an "Atkinson Dynamics Model AD-TB-25 Speaker," manufactured by Federal Signal, which was affixed to a weather deck bulkhead. The plaintiff further alleged that the specific cause of his injury was the failure of the powder coating applied to the talk back part of the speaker to congeal or adhere properly, which caused it to degrade into loose,

dusty, free-flying particles of paint. Tammcor Industries, Inc. ("Tammcor"), the Defendant here, who is alleged in this case to be responsible for the painting, was not named in that lawsuit.

Federal Signal settled the lawsuit in December 2014 for the sum of $450,000.00. Federal Signal also entered into side agreements with two other defendants in the law suit. In return for contributions toward the settlement of $25,000.00 each, Federal Signal was assigned all rights, if any, those defendants had against Tammcor.

Federal Signal, after settling the products liability lawsuit, filed this suit against Tammcor seeking indemnity to recover its and its two co-defendants' defense and settlement costs. The First Amended Complaint alleges that the defective product that gave rise to the product liability lawsuit was manufactured by Tammcor and sold to Federal Signal for incorporation into the AD-TB-25 Speaker. Count I of the First Amended Complaint seeks contractual indemnification based on a written provision in an alleged purchase order given to Tammcor by Federal Signal. Count III is based on Implied Indemnification, and Count IV is based on Equitable Contribution. (Count II is not directed against Tammcor.) Tammcor has moved for dismissal of each of the three counts.

The specific parts in question subject to the powder coating failure were metal castings which, Federal Signal contends, were purchased from Tammcor pursuant to written purchase orders. These castings were incorporated by Federal Signal into the AD-TB-25 Speaker System which it assembled and sold. Tammcor was responsible for obtaining the metal castings from a Federal Signal supplier and then coating and painting them. However, according to an expert report prepared for Federal Signal, these castings were not properly painted for a product intended for use in a "marine environment." The report further opined that the castings made of aluminum should have been pretreated in order to enable them to resist corrosion. In a letter Federal Signal sent to Hose-McCann Communications, the purchaser of the AD-TB-25 Speaker, it admitted that its speaker failed to pass a salt spray testing based on the corrosion performance criteria.

Federal Signal bases its claim for indemnity on the pre-printed terms of its standard form purchase order, which stated as follows in paragraph 12 of the Terms & Conditions:

> INDEMNIFICATION. Seller shall defend, indemnify and hold harmless Buyer against all damages, claims or liabilities and expenses (including attorney's fees) arising out of or resulting in any way from any defect in the goods or services purchased hereunder, or from any act or omission of Seller, its agents, employees or subcontractors. This indemnification shall be in

addition to the warranty obligations of Seller and Seller agrees to provide Certificates of Insurance for such Indemnity upon request.

Federal Signal produced examples of prior dealings between it and Tammcor where such a standard form purchase order was used. However, it was unable to produce any such purchase order governing the sale of the specific castings that were the subject of the products liability lawsuit. The only document produced that referred to this product was an offer letter Federal Signal sent to Tammcor, which purported to detail its offer to Tammcor to machine the specific product in question. This offer required Tammcor to purchase specific raw casting inventory from a Federal Signal supplier, then to transition the purchasing of castings to another Federal Signal supplier, and to maintain inventory of the castings on a consignment basis. The offer further stated that pricing, engineering, quality control, and delivery from die casting suppliers were to be handled by Federal Signal. The offer further provided that Tammcor was responsible for all tooling costs, and was responsible for maintaining inventory of product. The offer said nothing about pre-treating and/or painting the castings. Nor did the offer make mention of any requirement that Tammcor indemnify Federal Signal. The offer did, however, state that

"the agreement" could only "be modified in writing signed by both parties."

## II. TAMMCOR'S MOTION

Tammcor bases its Motion for Summary Judgment on Count I on Federal Signal's failure to produce a written indemnity agreement. It bases its Motion for Summary Judgement on Counts III and IV on Federal Signal's alleged design failure to ensure satisfaction of corrosion performance criteria, which made it at least partially at fault. Tammcor's Motion is straightforward: this is a breach of contract claim for indemnity, and the first element is the existence of a valid contract consisting of an offer, an acceptance, and consideration. *All American Roofing, Inc. v. Zurich Am. Ins. Co.,* 404 Ill.App.3d 438, 439 (1st Dist. 2010). Federal Signal has produced writings consisting of an offer agreement, engineering drawings, buy cards, a memorandum of understanding between the parties, and a Kanban agreement, none of which set forth an agreement on Tammcor's part to indemnify Federal Signal.

Federal Signal responds by asserting that the two parties had a long term business relationship, which started in 2004 and ended in 2008, under which Tammcor supplied Federal Signal with parts for industrial audio speakers that Federal Signal

assembled and sold. In this case, Tammcor was responsible for obtaining, coating, and painting the castings to be used in the audio speakers. Tammcor shipped the castings from its Kentucky plant to Federal Signal's facility in Danville, Kentucky. The specifications required Tammcor to pretreat the castings by applying an undercoating and then paint them.

Over the course of their relationship, it was Federal Signal's practice to send Tammcor purchase orders specifying the number of parts to be shipped and the price per unit. Printed on the back of each purchase order were "terms and conditions of purchase," which included the indemnity language previously noted. Federal Signal further responds that during the years in question, 2004 through 2008, Tammcor made over 400 shipments of parts to Federal Signal which were initiated by its form written purchase orders. Federal Signal's 30(b)(6) witness, Pat Oddo ("Oddo"), testified that each purchase of parts from Tammcor was initiated by a purchase order containing the indemnity provision. Additionally Federal Signal prepared "buy cards," showing that the specific part in question was purchased pursuant to a specific purchase order number. Further, Federal Signal's purchase order number appeared on Tammcor's Shipment Register, which was used for tracking customer orders. This register showed the sale of the parts in question and were

referred to by the Federal Signal purchase order number. Federal Signal concluded by arguing that the missing purchase order is a so called "lost instrument" and the existence, as well as the terms and conditions of lost instruments, can be proved by secondary (circumstantial) evidence, which it has produced in abundance in this case. It relies upon Federal Rule of Evidence 1002 as well as *Coltec Indus. Inc. v. Zurich Ins. Co.,* 2002 WL 31185789 at *5 (N.D. Ill. Sept. 30, 2002).

Tammcor answers by arguing that, because Federal Signal's witness Oddo could not affirm that he witnessed the destruction of the alleged lost document, Federal Signal cannot rely on secondary evidence. It cites *U.S. v. McGaughey,* 977 F.2d 1067, 1071 (7th Cir. 1992), a dubious contention as we shall see. Tammcor further argues that the offer letter's failure to state an indemnity requirement establishes that there is no agreement to indemnify. Finally, Tammcor argues that Federal Signal has failed to establish anything but a "mere possibility" of a factual dispute, which is insufficient to avoid summary judgment under *Posey v. Skyline Corp.,* 702 F.2d 102, 106 (7th Cir. 1983).

### III. <u>DISCUSSION</u>

It appears to the Court that Federal Signal has the better of the argument. It has established more than a "mere possibility" that the missing purchase order existed. First,

Federal Signal's witness, Oddo, testified that no purchases were made from Tammcor without a written purchase order containing the indemnity provision, and there were hundreds of them issued to Tammcor over the years, all containing the indemnity provision. Thus, this case is similar to *Capitol Converting Equipment, Inc. v. Lep Transport, Inc.*, No. 88 C 6001, 1989 WL 121272 (N.D. Ill. Oct. 11, 1989). In that case, the defendant sold equipment to the plaintiff that was lost at sea. The plaintiff sought damages for the value of the equipment and loss of profits. The defendant presented an affirmative defense that the invoice by which the equipment was sold contained a limitation of liability. The specific invoice was claimed to be lost. The defendant introduced evidence of a course of dealing between the parties consisting of hundreds of transactions initiated by invoices, and produced six randomly selected invoices all of which contained the limitation of liability. In response, the plaintiff merely denied that such an invoice existed. The court held that such a course of dealing between the parties presented a question of fact that precluded summary judgment as to the affirmative defense of limited liability. In support of its decision, the court cited Section 1-205 of the Uniform Commercial Code (now 810 ILCS 5/1-303 (b)), which

provides for a course of dealing to give a "common basis of understanding…."

In response, Tammcor, like the defendant in Capital Converting, denied the applicability of the Commercial Code, contending that this was a sale of services (painting) rather than of a product (castings). However, as is clear from the offer document, Tammcor was to supply castings that were to be painted and was paid for painted castings. With respect to the course of dealing, all Tammcor's 30(b)(6) witness could testify to was:

> Q. Okay. Sir would you explain that process – and now I'm talking about Federal Signal, not generally, but just – not all your customers. I'm talking about specifically Federal Signal.
> Would you explain the process or describe the process for placing and filling orders for Federal Signal.
> Okay. So, first of all, for – for Federal Signal to initiate an order, would they send you a purchase order?
>
> A. To the best of my memory, they would either send an e-mail or call in a purchase order.
>
> Q. Did they – so they would send an e-mail, or they would call in – a what – an order?
>
> A. Call in, like, a purchase order. I believe they also probably faxed at that point in time. They would fax it – a purchase order in, or they would perhaps e-mail or call one in.
>
> Q. Okay. So – so the order would be initiated by Federal Signal using a purchase order; is that correct?

>    A. To the best of my memory, yes.
>
>    Q. And they would send that to you in – to the best of your recollection – in one of three ways: They would either fax it in or they'd e-mail in the purchase order, and you said that they would call in the purchase order.
>    What do you – do you recall them actually doing that, actually calling in a purchase order?
>
>    A. Yes.
>
>    Q. Okay. All right. And the purchase order that would be sent in to you, whether by fax or e-mail, that was a – that was on a Federal Signal purchase order form, correct?
>
>    A. Yes.

Thus, as was true in *Capitol Converting Equipment,* Tammcor was unable to provide clear testimony contradicting Federal Signal's circumstantial evidence.

The case of *U.S. v. McGaughny*, is on point, even though it is cited by Tammcor. In that case a tax payer had allegedly executed a waiver of the statute of limitations while he and the government attempted to negotiate a compromise. They were ultimately unable to do so, and the government filed a suit to collect the delinquent tax. By the time the suit was filed the waiver was unable to be located. Based on government testimony it appeared that the document had been destroyed in accordance with IRS regular procedures regarding document retention. Various documents were introduced together with affidavits which

indicated that the waiver had indeed been executed.  The court relied upon Federal Rule of Evidence 1002, which provides that "other evidence of a document in writing . . . is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith. . . ."  The court continued on: "Of course, before secondary evidence may be used, it must be demonstrated that the original has actually been destroyed.  Unless someone testifies that he or she personally destroyed or witnessed the destruction of a document, such proof will ordinarily be circumstantial."  977 F.2d at 1071.  Thus, the court was saying not what Tammcor said it said, but that the missing document may be, and normally will be, proved by circumstantial evidence such has Federal Signal has offered in this case.

Moreover, Oddo said that the purchase order copies might have been lost due to Federal Signal's document retention policy.  In addition, all documents concerning the purchase state a purchase order number that is consistent and includes the product tracking documents maintained by Tammcor.

In summary, the Court finds that there is sufficient circumstantial evidence that an indemnity agreement governing the sale of the parts in question existed to raise a question of fact which precludes summary judgment here.

### A. Counts III and IV

Tammcor also seeks summary judgment as to Count III, Implied Contract of Indemnity, and Count IV, Equitable Contribution. Obviously implied indemnity is an alternative to contractual indemnity. According to the case of *Jinwoong, Inc. v. Jinwoong, Inc.*, 310 F.3d 962, 965-966 (7th Cir. 2002), the right to indemnity may be implied in a contract between two parties that have a preexisting relationship and fail to include an in indemnity agreement, where it is apparent that they would have done so had it occurred to them. However, it is generally limited to cases where one party is at fault and the other party blameless, *i.e.,* strictly liable. What the evidence here appears to show is that Tammcor was responsible for painting the subject parts and may have failed to do so properly in accord with the engineering drawings. However, Federal Signal's own expert stated that the specifications for the parts were not appropriate for a "maritime environment" and Federal Signal admitted to Hose-McCann Communications, the purchaser of the AD-TB-25, that its product failed to pass a salt spray testing based on the corrosion performance criteria. Thus, it appears that Federal Signal is not blameless so that is not entitled to take advantage of the doctrine of implied indemnity. *Jinwoong,* 310 F.3d at 966. Federal Signal disputes the admissibility of

the Hose-McCann letter, arguing both that it was not authenticated and was inadmissible hearsay. As to lack of authentication, production in discovery normally is considered sufficient authentication for the recipient to use in evidence. *See, U.S. v. Brown,* 688 F.2d 1112, 1116 (7th Cir. 1982). Federal Rule of Evidence 901 provides that authentication as a condition precedent to admissibility "is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." The fact of its production in discovery is powerful evidence that the document is authentic unless the producer disavows it at the time of production. As to hearsay, it is admissible under Rule 801(d)(2) as an admission of a party opponent.

With regard to Count IV, Equitable Contribution, Federal Signal cites no cases supporting such a claimed cause of action. Of course, comparative fault allows a fact finder under certain circumstances to allocate contributions to a judgment. However, this would require a repeat trial of the underlying personal injury case. Since Federal Signal did not rely on comparative fault, it is waived. Therefore, Count IV is dismissed.

## IV. CONCLUSION

For the reasons stated herein, Tammcor's Motion for Summary Judgment [ECF No. 67] is denied as to Count I, but granted as to Counts III and IV.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: June 28, 2017